# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

MITZI G. BAKER,

          Appellant,

      v.

SOCIAL SECURITY
    ADMINISTRATION,

          Agency.

DOCKET NUMBER
CH-1221-19-0187-W-1

DATE: January 17, 2024

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Mitzi G. Baker</u>, Chicago, Illinois, pro se.

<u>Lyndsey Frushour</u>, Esquire, and <u>Linda M. Januszyk</u>, Esquire, Baltimore,
   Maryland, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

**FINAL ORDER**

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED to find that the appellant's second prior Board appeal also constituted protected activity that was a contributing factor in a personnel action, to find that the appellant was subjected to a significant change in working conditions personnel action, and to supplement the administrative judge's analysis that the agency established by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected activities, we AFFIRM the initial decision.

## BACKGROUND

The appellant is employed as a Paralegal Specialist/Case Manager with the agency's Chicago National Hearing Center (NHC). Initial Appeal File (IAF), Tab 1 at 2; Tab 99 at 67. She filed an IRA appeal alleging that, in reprisal for filing Board appeals in 2017 and 2018, the agency took the following personnel actions: (1) failed to select her for a detail in June 2018; (2) subjected her to a hostile work environment by, among other things, assigning her to the Falls Church NHC; (3) denied her a performance award for fiscal year 2017; (4) issued her a low rating on her fiscal year 2018 performance evaluation; and (5) issued her a letter of reprimand on September 28, 2018. IAF, Tab 1 at 14.

After the appellant withdrew her request for a hearing, IAF, Tabs 69, 72, the administrative judge issued an initial decision based on the written record, IAF, Tab 107, Initial Decision (ID) at 3. The administrative judge found that the appellant engaged in protected activity that was a contributing factor to her alleged personnel actions, except for her hostile work environment claim. ID at 2, 6-7, 10-11. Regarding the hostile work environment claim, the administrative judge found that the appellant failed to show that she was subjected to a significant change in duties, responsibilities, or working conditions. ID at 7-9. The administrative judge further found that the agency proved by clear and convincing evidence that it would have taken the same actions absent the appellant's protected activity. ID at 11-17.

The appellant has filed a petition for review. Petition for Review (PFR) File, Tab 3. The agency has opposed the appellant's petition and the appellant has filed a reply. PFR File, Tabs 5, 8.

## DISCUSSION OF ARGUMENTS ON REVIEW

<u>Both of the appellant's prior Board appeals constituted protected activity and the appellant established that they were both a contributing factor to the alleged personnel actions.</u>

The Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before the Office of Special Counsel (OSC) and makes nonfrivolous allegations that: (1) she made a protected disclosure or engaged in protected activity; and (2) the disclosure or activity was a contributing factor in the agency's decision to take or fail to take a personnel action. *Williams v. Department of Defense*, 2023 MSPB 23, ¶ 8; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016). After establishing the Board's jurisdiction in an IRA appeal, the appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure or engaged in protected activity that was a contributing factor in an agency decision to take or fail to take a personnel action.

*Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 6; *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015); *see* 5 U.S.C. § 1221(e)(1). One way to prove contributing factor is by the knowledge/timing test under which an appellant may show that her protected disclosure or activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that: (1) the official taking the personnel action knew of the disclosure or activity; and (2) that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or activity was a contributing factor in the personnel action. *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 19; *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 13 (2015); *see* 5 U.S.C. § 1221(e)(1).

Here, the record reflects that the appellant filed two prior Board appeals alleging whistleblower reprisal. In April 2017, she filed an IRA appeal alleging that the agency subjected her to alleged personnel actions in reprisal for making various alleged protected disclosures. *Baker v. Social Security Administration*, CH-1221-17-0318-W-1, Initial Appeal File (0318 IAF), Tab 1. In June 2018, she filed another IRA appeal alleging that her supervisor issued her a low performance rating in 2017 in reprisal for her 2017 Board appeal, i.e., for filing an appeal seeking to remedy a violation of 5 U.S.C. § 2302(b)(8). *Baker v. Social Security Administration*, CH-1221-18-0412-W-1, Initial Appeal File (0412 IAF), Tab 1. The administrative judge found that the appellant's first Board appeal constituted protected activity because it raised a claim of reprisal for whistleblowing, but she did not address the second appeal. ID at 6-7. We agree with the administrative judge's finding regarding the first appeal, but modify the initial decision to find that the appellant's second Board appeal also constituted protected activity because it also sought to remedy reprisal for whistleblowing. *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 7 (2013) (explaining that the Whistleblower Protection Enhancement Act extended the Board's IRA jurisdiction to claims arising under 5 U.S.C. § 2302(b)(9)(A)(i)).

Regarding contributing factor, we find that the responsible management officials had knowledge of the appellant's protected activity. The record reflects that J.B., the appellant's first-level supervisor, issued the appellant a reprimand on September 28, 2018, and rated the appellant on her 2018 performance evaluation on October 23, 2018. IAF, Tab 99 at 62-63. K.C., the appellant's second-level supervisor, made the decision to assign the appellant to the Falls Church NHC on or about July 17, 2018, and in July 2019 she also made the decision to deny the appellant's performance award for fiscal year 2017. *Id.* at 50-52. She was also involved in the decision not to select the appellant for a detail and to issue the appellant the reprimand. *Id.* at 48-50. Chief Administrative Law Judge (ALJ) J.P., the appellant's third-level supervisor, made the decision not to select the appellant for a detail on or about June 5, 2018. IAF, Tab 11 at 88.

J.B. became aware of the appellant's 2017 Board appeal on November 28, 2017. 0412 IAF, Hearing Transcript at 92-93 (testimony of J.B.). J.B. and K.C. were also aware of the appellant's 2018 Board appeal as of July 2018 when they learned of and/or received a copy of the appellant's June 15, 2018 jurisdictional response, which contained unauthorized personally identifiable information (PII) of claimants, for which J.B. issued the appellant the September 28, 2018 reprimand. IAF, Tab 99 at 50, 61-62, Tab 11 at 83. K.C. and Chief ALJ J.P. had knowledge of the appellant's 2017 Board appeal because they testified at the hearing in that appeal on January 25, 2018. 0318 IAF, Hearing Transcript. The alleged personnel actions occurred between June and October 2018, within 1 and a half years of when the appellant filed her 2017 Board appeal and within months of when she filed her 2018 Board appeal. Accordingly, the appellant has established that her protected activities were a contributing factor in the alleged personnel actions. *See Peterson v. Department of Veterans Affairs*, 116 M.S.P.R. 113, ¶ 16 (2011) (stating that a personnel action taken within 1 to 2 years of the appellant's disclosure satisfies the knowledge-timing test).

<u>The administrative judge properly found that the appellant did not exhaust discrete events in support of her alleged hostile work environment claim that occurred after the Office of Special Counsel issued its close out letter.</u>

The appellant contends that she was subjected to additional personnel actions not addressed above, specifically a significant change in duties, responsibilities, or working conditions as part of an alleged hostile work environment. IAF, Tab 86 at 3, 15-18. In support of her claim, she alleges that the agency assigned her undesirable duties when, effective April 2, 2018, she was assigned to temporarily work for ALJ F.R. and, in July 2018, she was assigned to work for the Falls Church NHC. IAF, Tab 87 at 3, 19-20. She further raised numerous other alleged incidents of harassment that occurred in 2019 and 2020. *Id.* at 15-17.

Although the appellant characterized her claims as establishing a hostile work environment, we agree with the administrative judge that the only claims the appellant exhausted before OSC concerning an alleged hostile work environment were the April and July 2018 changes to her job duties. ID at 9. To the extent the appellant raised a myriad of additional alleged incidents of a hostile work environment that occurred over the course of the year after OSC issued its close out letter on December 6, 2018, IAF, Tab 1 at 14, Tab 87 at 15-17, we agree with the administrative judge that such claims were not exhausted before OSC. After the issuance of the initial decision, the Board decided *Chambers v. Department of Homeland Security*, 2022 MSPB 8 ¶ 10, in which it clarified that the substantive requirements of exhaustion are met when an appellant has provided OSC with a sufficient basis to pursue an investigation and that the Board's jurisdiction in an IRA appeal is limited to those issues that have been raised with OSC. Although we acknowledge that an appellant can give a more detailed account of her whistleblowing activities before the Board than she did to OSC, *see Chambers*, 2022 MSPB 8, ¶ 10, we find that OSC could not have pursued an investigation of events that occurred after it closed its investigation,

*see id.* (stating that the purpose of requiring an appellant to exhaust his remedies before OSC before filing an IRA with the Board is to give OSC the opportunity to take corrective action before involving the Board in the case); *Onasch v. Department of Transportation*, 63 M.S.P.R. 158, 164 (1994) (finding that the appellant failed to prove exhaustion when OSC issued its termination letter before a performance appraisal was issued such that OSC could not have investigated the circumstances surrounding the appraisal).

On review, the appellant asserts that the administrative judge erred in finding that her post-December 6, 2018 hostile work environment claims were not exhausted before OSC because they were part of a continuing hostile work environment that she did exhaust before OSC. PFR File, Tab 3 at 25. Although she does not cite it, the appellant appears to reference *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 115-17 (2002), in which the Supreme Court held that an employee alleging a hostile work environment claim under Title VII of the Civil Rights Act of 1964 may rely on component acts of the hostile work environment falling outside of the statutory time period for filing a charge with the Equal Employment Opportunity Commission provided that one of the acts contributing to the claim occurred within the filing time period. We find that the continuing violation doctrine is inapplicable here. An appellant in an IRA appeal must meet a statutory administrative exhaustion requirement, which is why this case is not akin to the situation in *Morgan*. *See* 5 U.S.C. § 1214(a)(3). Here, the appellant neither amended her OSC complaint to incorporate her post-December 6, 2018 allegations of reprisal, nor sought to file a new complaint with OSC.

<u>The administrative judge correctly found that the appellant's April 2018 assignment did not constitute a significant change in working conditions personnel action but the administrative judge erred in her similar finding regarding the July 2018 assignment.</u>

The administrative judge found that the appellant failed to prove that she was subjected to a hostile work environment because the changes to the

appellant's assignments did not amount to a significant change in the appellant's working conditions, but rather constituted management decisions on how to assign paralegal work efficiently and appropriately. ID at 8-9. In particular, she found that the appellant did not present evidence of the kind of pervasive and severe behavior that objectively could be considered a change in working conditions sufficient to constitute a hostile work environment. ID at 8. She further found that a reasonable person would consider the assignments legitimate and that the agency did not retaliate against the appellant for having engaged in protected activity. ID at 9. Such an analysis, however, conflates the issues of whether the appellant was subjected to a personnel action and whether the agency proved that it would have taken such a personnel action absent the appellant's protected activity.

Although the appellant characterized her claims as an ongoing hostile work environment claim, as discussed previously, we may only consider whether the claims she exhausted before OSC—the April and July 2018 changes to her duties —constitute a significant change personnel action. We agree with the administrative judge that the April 2018 assignment did not constitute a significant change personnel action. However, as set forth below, we modify the initial decision to find that the appellant proved that she was subjected to a significant change personnel action when, effective July 30, 2018, she was assigned to work for the Falls Church NHC.

The appellant contends that she was subjected to a significant change personnel action when, effective April 2, 2018, she was assigned to work for ALJ F.R., who was temporarily assigned to hold hearings for the Chicago NHC for the months of June to August 2018 until ALJ F.R. began hearing specialized fraud cases.[2] IAF, Tab 87 at 19, Tab 99 at 145-50. As part of her duties while assigned to ALJ F.R., the appellant was responsible for case workup, pre-hearing

---

[2] The appellant's physical work location remained the Chicago NHC while she was assigned to work for ALJ F.R.

development, scheduling, and closing the hearing. IAF, Tab 99 at 161-63. The record reflects that as of March 2018, the appellant was not assigned to work for a specific ALJ, but rather had been performing other duties, including, among other things, assisting the master docket clerk with electronic folder transactions, processing predevelopment for unrepresented claimants, and assisting with congressional responses for cases not assigned to judges. IAF, Tab 87 at 19, Tab 99 at 140; Tab 11 at 79.

We find that the appellant has not shown that her April 2, 2018 temporary assignment to ALJ F.R. was a significant change in duties because the record reflects that case managers, such as the appellant, were commonly assigned different duties to meet office needs, including assignments to different ALJs. IAF, Tab 100 at 120; *see, e.g., Shivaee v. Department of the Navy*, 74 M.S.P.R. 383, 388 (1997) (considering whether it was common to relocate the work site of agency employees from a building inside the naval base to a building located outside the naval base in addressing whether the appellant's office move was "significant"). For example, in September 2017, the appellant had been assigned to another ALJ who was located in Atlanta, Georgia but handing cases for the Chicago NHC. IAF, Tab 11 at 78-79; Tab 90 at 54. The appellant also submitted a declaration from a different former ALJ in the Chicago NHC for whom she previously had been assigned to work. IAF, Tab 90 at 53. Additionally, in April 2018, two other case managers who were not assigned to a specific ALJ at that time were similarly assigned to assist other ALJs temporarily assigned to the Chicago NHC. IAF, Tab 99 at 55, 150.

The appellant also alleges that her assignment to ALJ F.R. was effectively a demotion from a case manager to a legal assistant. IAF, Tab 86 at 16, Tab 6 at 27. However, the record reflects that there is some overlap between case manager duties and legal assistant duties and that most case managers also performed some legal assistant duties. IAF, Tab 99 at 55-56, 68-74, Tab 100 at 122-28. The record further reflects that, at the appellant's request,

another case manager was assigned to assist her. IAF, Tab 99 at 55, 159-67. Thus, we find that the appellant has not sufficiently explained which duties she was performing that were legal assistant duties and how or why her performance of such duties amounted to a significant change. *See Skarada*, 2022 MSPB 17, ¶ 23 (stating that to prove that the agency subjected her to a "significant change" in duties, responsibilities, or working conditions, the appellant must provide sufficient information and evidence to allow the Board to determine whether the agency's alleged action or actions were "significant").

Next, we turn to the appellant's assertion that she was subjected to a significant change personnel action when the agency assigned her to work for a different office, the Falls Church NHC, effective July 30, 2018. IAF, Tab 6 at 28, 152, Tab 86 at 18. The record reflects that on July 17, 2018, K.C., the appellant's second-level supervisor, reached out to the NHC Central Office Branch to propose that the appellant be assigned to work up cases for the Falls Church NHC instead of the Chicago NHC. IAF, Tab 100 at 9. The NHC Central Office agreed to the arrangement and the appellant was informed that, effective July 30, 2018, she would transition to assisting virtually with case work up for the Falls Church NHC. *Id.* at 13. Although she remained in Chicago, her supervisory chain was in the Central Office NHC and she reported directly to the Branch Chief of the Workload Control Branch. *Id.* at 8, 34. Additionally, the appellant's new supervisor instructed her not to speak to anyone at the Chicago NHC. IAF, Tab 89 at 24. This assignment does not appear to have been temporary as the record reflects that the appellant continued to work for the Falls Church NHC as of June 28, 2019, when her new supervisor issued her a performance appraisal. *Id.* at 22. We find that, under these circumstances, the appellant's assignment to work for the Falls Church NHC, a different office, and to report to a different supervisory chain constitutes a significant change. Nothing in the record suggests that it was common for case managers to be permanently assigned to work for a

different office and the decision to do so appears to have singled out the appellant without affecting any other case managers.

Additionally, we find that the appellant has met her burden of proving that her prior protected activities were a contributing factor in her assignment to Falls Church NHC because, as discussed above, the appellant's second-level supervisor was aware of the appellant's 2017 and 2018 Board appeals, and the appellant was assigned to the Falls Church office a little over a year after she filed her 2017 IRA appeal and a couple of months after she filed her 2018 Board appeal.  *See Peterson*, 116 M.S.P.R. 113, ¶ 16.

The agency proved by clear and convincing evidence that it would have taken the same personnel actions absent the appellant's protected activity.

Even if an appellant establishes that she engaged in protected activity that was a contributing factor to the agency's personnel action, the Board will not order corrective action if the agency can show by clear and convincing evidence that it would have taken the action absent the protected disclosures.  5 U.S.C. § 1221(e)(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.  Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established; it is a higher standard than the "preponderance of the evidence" standard.  *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶ 18 (2003), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004); 5 C.F.R. § 1209.4(e).

In determining whether an agency has met this burden, the Board will consider the following factors:  (1) the strength of the agency's evidence in support of the action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Lu*, 122 M.S.P.R. 335, ¶ 7 (citing *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999)).  When, as here, the personnel actions at issue are not disciplinary in

nature, the first *Carr* factor does not apply straightforwardly, and it is appropriate to consider the broader question of whether the agency had legitimate reasons for its action. *Smith*, 2022 MSPB 4, ¶ 23. In considering the second *Carr* factor, in addition to any individual motive to retaliate by the agency managers involved in the decision, we must fully consider whether a motive to retaliate can be imputed to the agency officials involved and whether those officials possessed a professional or institutional motive to retaliate because the protected disclosures and activities implicated agency officials and employees in general. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶¶ 14-15; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012). Regarding the third *Carr* factor, in the absence of evidence regarding how similarly situated non-whistleblowers are treated, this factor can drop out of the analysis. *Semenov v. Department of Veterans Affairs*, 2023 MSPB 16, ¶ 42. To the extent the agency does not present any evidence concerning how it treated similarly situated non-whistleblowers, this factor cannot favor the agency, however, the lack of evidence does not necessarily prevent the agency from meeting its overall clear and convincing burden. *Id.*; *Soto*, 2022 MSPB 6, ¶ 18; *see Rickel v. Department of the Navy*, 31 F. 4th 1358, 1366 (Fed. Cir. 2022); *Whitmore*, 680 F.3d at 1374.

The Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Id.* The Board must consider all of the evidence presented, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore*, 680 F.3d at 1368.

As set forth below, we modify the initial decision to supplement the administrative judge's analysis of the *Carr* factors, but still conclude that the agency met its burden. We also modify the initial decision to find that the agency proved by clear and convincing evidence that it would have assigned the appellant to work for the Falls Church NHC absent her prior protected activity

because the strength of the evidence in support of its actions outweighs any motive to retaliate.[3]

*Nonselection for Detail*

The appellant contends that the agency did not select her for a 120-day detail to perform supervisory case manager duties in reprisal for her prior Board appeals. IAF, Tab 87 at 2, 12-14. The record reflects that on June 5, 2018, Chief ALJ J.P. made the decision to select another individual for the detail from a list of six applicants. IAF, Tab 100 at 113-14. According to the appellant's second-level supervisor, she discussed the candidates with Chief ALJ J.P. and they believed that the appellant lacked the interpersonal skills and had conflicts with too many employees in the office to be the best-qualified applicant for the detail. IAF, Tab 99 at 49. According to a sworn statement from an agency labor and employee relations attorney, Chief ALJ J.P. retired and was unable to provide an affidavit due to his medical situation. *Id.* at 65-66.

The statement that the appellant had conflicts with many employees could refer to her protected activity against management. However, management's stated concern over the appellant's interpersonal skills is supported by other evidence in the record, including her fiscal year 2018 performance appraisal which noted specific deficiencies in her interpersonal skills unrelated to her protected activity. IAF, Tab 11 at 78-79. In particular, management clearly had concerns about her interactions with ALJ F.R. IAF, Tab 99 at 166, 173-76. The record also includes email correspondence from the appellant that generally supports the agency's view. *Id.* at 153-54, 168; Tab 100 at 105; 0318 IAF, Tab 57 at 23; 0412 IAF, Tab 7 at 40.

The appellant's performance rating of a 3 (out of 5) in interpersonal skills for fiscal year 2018 is also consistent with the ratings she received on her 2016

---

[3] The administrative judge did not address whether the agency met its clear and convincing evidence burden regarding this personnel action because, as discussed above, she found that the appellant failed to prove it constituted a personnel action.

and 2017 performance evaluations. 0412 IAF, Tab 7 at 25, Tab 82 at 4. In her 2016 performance evaluation, her prior supervisor indicated, "there have been continual instances in which you communicated in a confrontational manner." 0412 IAF, Tab 82 at 4. Such concerns predate the appellant's 2017 and 2018 Board appeals. The record also reflects that on March 13, 2017, prior to either of the appellant's Board appeals, Chief ALJ J.P. observed that the appellant "often [had] conflicts" and started email chains regarding such conflicts. IAF, Tab 89 at 13.

However, we must consider the evidence that detracts from the conclusion that the appellant's interpersonal skills were lacking. The appellant asserts that the agency's reasoning is contrary to her temporary supervisor's characterization of her interpersonal skills just prior to her nonselection. IAF, Tab 86 at 19. She points to her temporary supervisor's April 20, 2018 performance discussion notes that described the appellant's interpersonal skills as follows: "[y]our interactions with co-workers, management, ALJ's and the public are cordial and professional." IAF, Tab 6 at 92. However, this individual appears to have only supervised the appellant for less than 4 months while the appellant's first-level supervisor, J.B., was on a detail. IAF, Tab 99 at 58-59. The appellant also submitted her fiscal year 2019 performance evaluation from the Falls Church NHC supervisor who rated the appellant 5 (out of 5) in interpersonal skills and stated that the appellant "has demonstrated sound interpersonal skills." IAF, Tab 89 at 19. However, this one review, which was for a period after the disputed detail, is inconsistent with the weight of the record evidence concerning the appellant's interpersonal skills in the period prior to the decision regarding the detail. We find that the agency has provided strong evidence of legitimate reasons for its decision not to select the appellant for the detail.

Regarding the second *Carr* factor, both K.C. and Chief ALJ J.P. could have had a motive to retaliate for the appellant's 2017 Board appeal, which named and implicated both individuals, and at which both testified at the hearing on

January 25, 2018.[4]  However, the strength of any motive is tempered by the fact that there is no indication that either faced any adverse consequences or discipline due to the appellant's alleged disclosures that implicated them.  *See Rickel*, 31 F.4th at 1366 n.4 (referencing with approval the Board's finding that a motive to retaliate was tempered by the lack of adverse consequences as a result of the protected activity).  Additionally, we acknowledge that both individuals could have had an institutional motive to retaliate for the appellant's disclosures of alleged agency wrongdoing, but the evidence suggesting such a motivation is slight.  In sum, we find that there was some motive to retaliate.

Regarding *Carr* factor three, several other individuals were not selected for the detail, but the agency has not presented evidence concerning whether they were whistleblowers.  Thus, based on this incomplete information, this *Carr* factor cannot support the agency.  Nevertheless, weighing all the evidence, including the evidence that detracts from the conclusion, we find that the agency's legitimate reasons for not selecting the appellant for the detail outweigh any motive to retaliate.[5]  Having found that the agency met its clear and convincing burden, we deny corrective action regarding this personnel action.

*July 2018 assignment to the Falls Church NHC*

Regarding the agency's reasons for its decision to assign the appellant to the Falls Church NHC, the record reflects that on July 17, 2018, the appellant's second-level supervisor, K.C., requested that the appellant be assigned to work up cases for the Falls Church NHC because that office was short-handed and noted that "with all that [was] going on with [the appellant], it might be a good way to have [the appellant] just work on one project and not be assigned to a judge."

---

[4] The appellant's 2017 appeal is pending on remand before the Central Regional Office under docket number CH-1221-17-0318-B-3.

[5] Even if we were to find that the lack of evidence regarding how similarly situated non-whistleblowers were treated cut slightly against the agency, we would still find that, weighing all of the evidence, the agency met its burden.

IAF, Tab 100 at 9. It is unclear from the record to what the appellant's supervisor was referring when she referenced all that was going on with the appellant, though conceivably she could have been referring to the appellant's protected activity. In a sworn affidavit, K.C. stated that she felt assigning the appellant to the Falls Church NHC was the best course of action because the appellant had expressed that she did not wish to be assigned to an ALJ and because ALJ F.R. reported to management that she was unhappy with her interactions with the appellant, including the appellant's response when asked to create a hearing sheet prior to a hearing. IAF, Tab 99 at 51.

The appellant does not dispute such assertions, but rather argues that she was improperly assigned to an ALJ in violation of a prior agreement reached during the reasonable accommodation process. IAF, Tab 103 at 26. Such a contention appears consistent with K.C.'s assertion that the appellant did not want to work for an ALJ. Additionally, record evidence supports K.C.'s reference in her email that ALJ F.R. was not happy working with the appellant. IAF, Tab 6 at 157-58, Tab 99 at 173-76. In early June 2018, ALJ F.R. notified management that the appellant was apparently refusing to prepare a cover sheet for hearings and stated, "[t]here is more to my interactions with her, but I will not overload you with details." IAF, Tab 99 at 175. In response, K.C. suggested that if the appellant was not able to do what ALJ F.R. wanted, they would assign someone else to work for her. *Id.* at 174. Moreover, the record reflects that the appellant expressed her displeasure with her assignment to ALJ F.R. and even viewed it to be a demotion to legal assistant position. IAF, Tab 6 at 129, 131, 139, 142. Thus, considering all the evidence, we find that the agency presented significant evidence that it had legitimate reasons for its decision to assign the appellant to the Falls Church NHC.

Regarding the second *Carr* factor, as discussed, K.C. could have had a motive to retaliate for the appellant's 2017 Board appeal. Although K.C. may have been aware of the appellant's 2018 Board appeal at the time she inquired

about reassigning the appellant, she would not have had much motive to retaliate because she was not the subject of the appellant's 2018 Board appeal.[6] We acknowledge that K.C. could have had an institutional motive to retaliate for the appellant's protected activities, but evidence suggesting such a motivation is slight. Thus, in sum, we find that there was some motive to retaliate.

As to the third *Carr* factor, there is no record evidence concerning the agency's treatment of similarly situated non-whistleblowers and thus again this factor drops out of the analysis. Therefore, this factor cannot weigh in the agency's favor.[7] Nonetheless, we find that the agency's legitimate reasons for its decision outweigh any motive to retaliate. Having found that the agency met its clear and convincing burden, we deny corrective action regarding this personnel action.

*Denial of Performance Award for Fiscal Year 2017*

Next, the appellant contends that her second-level supervisor, K.C., withheld her performance award for fiscal year 2017 in reprisal for her protected activity. IAF, Tab 87 at 9. According to K.C., in July 2018, she made the decision to withhold the appellant's award because the appellant had been issued a 3-day suspension in October 2017 and she was given guidance from the labor and employee relations support office that the agency has the discretion not to grant an award based on the employee's receipt of a disciplinary action in the most recent fiscal year. IAF, Tab 99 at 51-52, 127-29. The administrative judge found that the agency had strong evidence in support of its decision to withhold the appellant's performance reward because it was supported by a "clear and unambiguous policy" in the collective bargaining agreement (CBA) that provided

---

[6] The appellant's 2018 Board appeal is still pending before the Board under docket number CH-1221-18-0412-W-1.

[7] Even if we were to find that the lack of evidence regarding how similarly situated non-whistleblowers were treated cut slightly against the agency, we would still find that, weighing all of the evidence, the agency met its burden.

for withholding the award if the employee had received a disciplinary action during the fiscal year. ID at 13. While we agree that the CBA provides some legitimate basis for the agency's decision, the administrative judge overstated the significance of such evidence because the CBA is discretionary and K.C. thus exercised her discretion to withhold the appellant's award. IAF, Tab 11 at 28; Tab 99 at 127-29. Nonetheless, the record reflects that the appellant did receive a 3-day suspension on October 27, 2016, during the relevant fiscal year. IAF, Tab 99 at 130. On petition for review, the appellant asserts that the administrative judge failed to consider all pertinent evidence, including that which detracts from the conclusion that the agency met its burden, but she fails to identify any particular evidence. PFR File, Tab 3 at 11-12. She also asserts that the agency's evidence is weak because K.C. was not authorized to make such a decision because the CBA provides that only a first-level supervisor can initiate or propose disciplinary action. *Id.* Even if we considered the denial of an award to be a disciplinary action, the appellant has not cited any particular CBA provision in support of her assertion. Thus, we find that the strength of the evidence in support of the agency's action is strong.

Regarding the second *Carr* factor, we have found that although K.C. could have had a motive to retaliate, any such motive was slight given that she was not the subject of the appellant's 2018 Board appeal and did not suffer any adverse consequences as a result of the appellant's 2017 Board appeal. We acknowledge that she could have had an institutional motive to retaliate, but evidence suggesting such a motivation is slight. Thus, in sum, we find that there was some motive to retaliate.

Regarding the third *Carr* factor, in her sworn affidavit, K.C. stated that she does not recall having supervised another employee who was eligible for an award but who had been suspended in the most recent fiscal year. IAF, Tab 99 at 52. However, relevant comparators are not limited to those under K.C.'s supervision. *See Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir.

2016) (rejecting the agency's exceedingly narrow view of *Carr* factor three, which is directed at the agency not a particular supervisor). We find that *Carr* factor three cannot favor the agency because it did not provide sufficient evidence concerning whether other similarly situated agency employees who were not whistleblowers had been denied an award based on prior discipline. Thus, in the absence of evidence, the third *Carr* factor at most slightly favors the appellant.

Weighing the three factors, we nonetheless agree with the administrative judge that the agency has met its burden because we find that the agency's legitimate reason for its decision to deny the appellant's performance award outweighs any motive to retaliate and the lack of comparator evidence. Having found that the agency met its clear and convincing burden, we deny corrective action regarding this personnel action.

*Fiscal year 2018 Performance Appraisal Rating*

The appellant contends that in October 2018, J.B. retaliated against her by issuing her a low rating on her fiscal year 2018 performance appraisal. IAF, Tab 1 at 10. The record reflects that the appellant received an overall summary rating of having made a successful contribution and J.B. rated her in the applicable elements as follows: Interpersonal Skills 3 (out of 5), Participation 3 (out of 5), Demonstrates Job Knowledge 5 (out of 5), and Achieves Business Results 5 (out of 5), with an average rating of 4 (out of 5). IAF, Tab 6 at 100-103. The administrative judge found that the agency had strong evidence in support of its decision to rate the appellant a 3 for the interpersonal skills element. ID at 14-15. The administrative judge noted that J.B.'s review was balanced, both acknowledging that the appellant had good relations with claimants but stating that the appellant's communication with management could use improvement. ID at 14. The administrative judge found that the email exchanges between management and the appellant in the record supported the

appellant's supervisor's decision to rate the appellant a 3 for interpersonal skills, which the administrative judge deemed to be a fully successful rating. ID at 15. Thus, we agree that the agency had legitimate reasons for its rating.

On review, the appellant asserts that the administrative judge erred in her analysis but fails to identify specific errors in the analysis of the relevant evidence concerning this element. To the extent that she alleges that the administrative judge failed to consider her claim that she received a lower rating in the participation element due to reprisal, we address that issue now. PFR File, Tab 3 at 15. Regarding the participation element, the appellant's supervisor rated her as a 3 (out of 5), noting that the appellant was resistant to the shifts in her job duties and questioned management repeatedly about why or whether it was necessary for her to do the work. The record supports the appellant's supervisor's rating and conclusion that the appellant resisted management's assignments rather than demonstrating teamwork and/or initiative in seeking out and completing additional work assignments. IAF, Tab 6 at 127-132, 139, 142; Tab 99 at 166-68; Tab 100 at 13. Thus, we find that the agency had legitimate reasons for not rating the appellant higher than a successful contributor in this element. The appellant's performance ratings of a 3 in the interpersonal skills and participation elements are also consistent with the ratings she received in 2015, 2016, and 2017, which were issued by J.B. and two different supervisors.[8] 0412 IAF, Tab 7 at 25-26, Tab 82 at 4-5; 0318 IAF, Tab 12 at 206-07. We find that the agency presented strong evidence that it had legitimate reasons for the appellant's rating.

Regarding *Carr* factor two, J.B. could have had a slight motive to retaliate based on the appellant's 2018 Board appeal in which she was named. However,

_____

[8] We acknowledge, however, that, the appellant similarly alleges that her 2017 performance rating from J.B. was retaliatory in her 2018 Board appeal that is addressed under docket number CH-1221-18-0412-W-1. She also alleges that her 2015 performance evaluation by a different supervisor was retaliatory in her 2017 Board appeal that is addressed under docket number CH-1221-17-0318-B-3.

J.B. does not appear to have suffered any adverse consequences from the appeal. She could also have possessed an institutional motive to retaliate for the appellant's activities, but evidence suggesting such a motivation is slight. Thus, in sum, we find that there was some motive to retaliate.

Regarding the third *Carr* factor, although the record contains performance ratings J.B. issued to other subordinates, IAF, Tab 100 at 61-104, there is no indication whether any of these employees were whistleblowers. Thus, we cannot make a meaningful comparison and we find this factor cannot favor the agency. In the absence of evidence, the third *Carr* factor at most slightly favors the appellant. However, we find that the agency's legitimate reasons for its rating outweigh any motive to retaliate and lack of comparator evidence. Having found that the agency met its clear and convincing burden, we deny corrective action regarding this personnel action.

*September 28, 2018 Reprimand*

The appellant contends that on September 28, 2018, J.B., with input from K.C., issued her an official reprimand in reprisal for her prior protected activity. IAF, Tab 86 at 8. The basis for the reprimand was the appellant's submission, in connection with her 2018 Board appeal, of multiple documents containing PII of Social Security claimants. IAF, Tab 11 at 83-85. Regarding the first *Carr* factor, because the reprimand was disciplinary in nature, we consider the strength of the agency's evidence in support of the action. *See Lu*, 122 M.S.P.R. 335, ¶ 7. The administrative judge found that the agency had strong evidence in support of its decision to discipline the appellant because the appellant did not dispute that she disclosed the PII. ID at 11-12. The administrative judge further rejected the appellant's argument that the agency's evidence was weak because her disclosure was authorized. ID at 12. In particular, the administrative judge found that there was no need for the appellant to the disclose the names, phone numbers, and social security numbers of numerous claimants for purposes of her Board appeal

and that redacted emails would have served the same purpose to demonstrate the work the appellant completed. *Id.* Thus, she concluded that the information was not relevant or necessary to the appellant's Board appeal and any routine use exception permitting disclosure would not apply. *Id.* The administrative judge also noted that, notwithstanding the appellant's argument that the Board is a secure partner to which employees can send emails with unredacted PII, the appellant did not email her submission to the Board, but rather submitted paper copies by hand delivery. *Id.* On review, the appellant reiterates her arguments below and disputes generally the administrative judge's conclusion that the agency had strong evidence in support of the reprimand,[9] PFR File, Tab 3 at 17-20, but she does not meaningfully dispute the administrative judge's well-reasoned findings in support of the conclusion that the agency had strong evidence in support of the reprimand. We agree with the administrative judge's conclusion. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The administrative judge did not address the second *Carr* factor as it pertains to this personnel action. Accordingly, we do so now. As discussed above, although K.C. could have had a motive to retaliate, any such motive was slight given she was not the subject of the appellant's 2018 Board appeal and did not suffer any adverse consequences due to the appellant's 2017 Board appeal. J.B. could have had a motive to retaliate because she was implicated in the appellant's 2018 Board appeal, in which she was named, however, J.B. similarly does not appear to have suffered any adverse consequences. We acknowledge that both officials could have had an institutional motive to retaliate against the

[9] For example, the appellant sets forth various alleged misconduct by management and alleges that her supervisors committed perjury and failed to follow PII loss regulations. PFR File, Tab 3 at 17-20.

appellant based on her Board appeals against the agency, but evidence suggesting such a motivation is slight. Thus, in sum, we find that there was some motive to retaliate. Regarding the third *Carr* factor, the administrative judge found that the agency provided evidence that it had taken similar actions against other employees who had disclosed PII but who were not whistleblowers. ID at 12-13. On review, the appellant asserts that these were not proper comparators because they disclosed PII to non-secure sources, as opposed to disclosing it to the Board, or another Federal agency on the secure partner list. PFR File, Tab 3 at 22. She also asserts that there is no record evidence to suggest that these three comparators were not whistleblowers. *Id.* We find such arguments unavailing. The record contains evidence that the agency has reprimanded other employees in the Chicago NHC for a single inadvertent unauthorized disclosure of PII, which we find sufficiently similar misconduct to the appellant's misconduct. IAF, Tab 100 at 52-60. Although it is somewhat unclear whether these particular employees were whistleblowers, the agency provided sworn statements from the appellant's supervisors that a reprimand was consistent with how they disciplined other non-whistleblowers for failure to safeguard PII. IAF, Tab 99 at 50, 62. Thus, this factor slightly favors the agency.

Weighing all three *Carr* factors, we find that the motive to retaliate is outweighed by the strength of the evidence and the evidence that the agency takes similar actions against other non-whistleblowers. Having found that the agency met its clear and convincing burden, we deny corrective action regarding this personnel action.

<u>The appellant's claims of bias and recusal are unpersuasive.</u>

On review, the appellant contends that the administrative judge was biased against her and erred in denying her motions for recusal and to transfer the appeal to another office. PFR File, Tab 3 at 25-27. The record reflects that the appellant moved for recusal of the administrative judge because the administrative judge had presided over her prior 2018 IRA appeal, ruled against the appellant, and

made findings with which the appellant disagrees. IAF, Tabs 4, 42. The appellant further alleged that the administrative judge was biased against her in the prior appeal as evidenced by the administrative judge's conduct during conferences and the hearing, including restricting the appellant's questioning of witnesses, disparaging the appellant's skills, and recording the conferences against her wishes. IAF, Tab 42. We find that the appellant's disagreement with the administrative judge's prior rulings and findings and her displeasure with the administrative judge's exercise of her broad authority to control the course of the proceedings do not overcome the presumption of honesty and integrity that accompanies administrative judge's and do not show that the administrative judge abused her discretion in denying the motions to recuse herself. *See Oliver v. Department of Transportation,* 1 M.S.P.R. 382, 386 (1980) (finding that in making a claim of bias or prejudice against an administrative judge, a party must overcome the presumption of honesty and integrity that accompanies administrative adjudicators); *see also Maloney v. Executive Office of the President,* 2022 MSPB 26, ¶ 38 (stating that "[t]he mere fact that the administrative judge ruled against a party does not establish bias").

On review, the appellant also asserts that the administrative judge was biased against her during this appeal as evidenced by her actions in denying motions filed by the appellant, using a demeaning tone toward the appellant, and holding the case in abeyance for 8 months. PFR File, Tab 3 at 26. We find that such assertions are insufficient to establish "a deep-seated favoritism or antagonism that would make fair judgment impossible." *See Bieber v. Department of the Army,* 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States,* 510 U.S. 540, 555 (1994)); *cf. McCollum v. Department of Veterans Affairs,* 75 M.S.P.R. 449, 462 (1997) (finding that the administrative judge's failure to issue an initial decision within the Board's 120-day standard is not evidence of bias). Lastly, we find unpersuasive the appellant's unsupported assertion that the administrative judge was biased because she is a good friend of

the judge in the appellant's 2017 Board appeal whom the Board found should have recused himself. PFR File, Tab 3 at 26. The appellant offers conjecture with no specific facts to suggest that this administrative judge was biased or her impartiality might reasonably be questioned. *See, e.g., Allphin v. United States*, 758 F.3d 1336, 1343-44 (Fed. Cir. 2014) (finding that recusal is required when a reasonable person knowing all the facts would question the judge's impartiality).

Based on the foregoing, we affirm the initial decision as modified.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

**(1) <u>Judicial review in general</u>**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you</u>

receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

---

[11] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:        *Jennifer Everling*

_____
Jennifer Everling
Acting Clerk of the Board

Washington, D.C.